GEORGE LEVITIN et al., Respondents-Appellants, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 32773.)

Third Department, December 2, 1960.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman and Paxton Blair of counsel), for appellant-respondent.*

*Cribari, Scapolito & Solinger (W. E. Cribari and Jerome Beaudrias of counsel), for respondents-appellants.*

REYNOLDS, J. Appeal by the State and cross appeal by the claimants, George Levitin and Lee Levitin from a judgment of the Court of Claims which awarded claimants the sum of $178,306 plus interest for damages for permanent appropria-

tion of real property in the Village of Ardsley, Westchester County.

Prior to the taking the property consisted of 5.775 acres (251,560 square feet), which had been purchased in 1951 by the claimants at two cents a square foot for the purpose of developing it as a motel site. On June 1, 1954, 3.364 acres (146,564 square feet) located in the northeast section of the property was appropriated for the Thruway. This land was completely unimproved. Of the 146,564 square feet, 27,000 lay in a sewer easement and about 13,000 was in the bed of the Saw Mill River which meandered through the appropriated parcel. Part of the remaining 2.411 acres in the southwest section was occupied by a motel of 50 units which had been completed more than a year before the taking and was being operated at a profit under the name of Ardsley Acres Hotel Court. There was a motel plan which provided for 130 units with six separate structures to be erected, so that with landscaping it would have occupied the entire property. The appropriation in no way interfered with the operation of the completed 50 units, indeed, probably increased the occupancy because of a Thruway exit at this point.

The claimants put in a claim for $530,000 for the taking of the unimproved portion based entirely on a " projected " capitalization of income evaluation, i.e., they estimated the net income of 129 units and one office, capitalized that estimate at 8% and reached a residual land value for the whole 5.775 acres of $700,000. From this was subtracted $170,000, the residual land value of the 2.411 acres remaining based on capitalization of the net income actually derived from the 50 units already operating. The remainder of $530,000 is urged here as the market value of the land taken.

Such a method of evaluation of vacant, unimproved land is completely unprecedented. There is no authority cited by claimants in support of it and none is to be found, for how can income be capitalized to produce a residual land value when the appropriated land is neither producing income nor equipped to produce such income? The fact that part of the entire parcel was producing income because of a business operated thereon is of no moment even if it be accepted that the highest and best use of the appropriated part would have been an extension of that business. See *Sparkill Realty Corp.* v. *State of New York* (268 N. Y. 192) where the court held that a claim based upon a conclusion conjectured from data founded only in speculation could not be countenanced, and *Berzel & Co.* v. *State of New York* (8 A D 2d 886),

This is not to say that prospective use of highest and best use and its influence on a prospective purchaser may not be an influence in the determination of market value. But a claim is improper where it is based entirely on hypothetical profits estimated from a nonexistent business (*New York Cent. R. R. Co.* v. *Maloney,* 234 N. Y. 208; *Matter of Niagara, L. & O. Power Co.* v. *Horton,* 231 App. Div. 402).

The award must be reversed and a new trial ordered because claimants' method of evaluation of damages is unsound. There is no substantial evidence to support the State's figure of $30,000 and finally no legal evidence to support the finding of the court.

The State swore an appraisal witness who testified to a market value of $30,000 to the appropriated land. He set a basic figure of 20 cents per square foot, but there was no disclosure of how he arrived at it. He shows no comparable sales, or no assessed valuation. In short there was no substantial evidence to support his figures. His appraisal is just as speculative as the detailed method of the claimants which was accepted at least in part by the court below.

While there is no way to determine just what method the court used in reaching the amount of the award herein, because the findings of fact do not demonstrate it, counsel for claimants opines that the award was based upon a combination of the land residual value, obtained by the capitalization of net income method as applied to the profits actually realized from the 50 units, and a comparable sale in the vicinity the resulting average being assigned as the market value per square foot of the appropriated land. If there is no basis for estimating a hypothetical land residual value through use of the capitalization of income technique for vacant land there can likewise be no basis for projecting to such land a residual value based on the same technique even though such value may have been derived from actual profits. It is speculation to assume that the same percentage of profits could be maintained for 130 units as was actually derived from 50.

In our view the award should be reversed and a new trial ordered to permit the production of further and acceptable evidence of market value.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Judgment reversed on the law and the facts and a new trial ordered, with costs to abide the event.