142 So.2d 652 (1962)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Appellant,
v.
Finnon LEWIS et ux., Appellees.
No. 5404.
Court of Appeal of Louisiana, First Circuit.
May 21, 1962.
Supplemental Opinion June 19, 1962.
Rehearing Denied June 29, 1962.
*653 D. Ross Banister and B. B. Croom, Baton Rouge, for appellant.
Benton & Moseley by E. D. Moseley, Baton Rouge, for appellees.
Before ELLIS, HERGET and MILLER, JJ.
HERGET, Judge.
This is an expropriation suit by the State of Louisiana, through the Department of Highways wherein certain property of the defendant, Finnon Lewis et ux., lying within the right-of-way of a proposed Plank Road-Airline Highway interchange in the Parish of East Baton Rouge was expropriated. Upon filing its suit the Department deposited in the Registry of the Court the sum of $54,476 as the value of the property expropriated, which amount the Defendants withdrew without prejudice to their right to contest the issue of the value of the property expropriated, and in answer to the suit Defendants alleged just compensation to be the sum of $85,165. For written reasons assigned, the Trial Court fixed the award of just compensation in the amount of $85,000, from which judgment the Department thereafter appealed to the Supreme Court, which Court transferred the appeal to this Court under the recent constitutional changes affecting jurisdiction.
Prior to the taking, Defendants' property, located on the north side of the Airline Highway just east of the intersection of the Airline Highway and Plank Road, consisted of a lot having a frontage of 151 feet on the Airline Highway by a depth on its east line of 139.6 feet; a depth on its west line of 159.2 feet and a width across the rear of 150 feet. Improvements consisted of a service station combined with a restaurant, wash and grease rack, two concrete block bunk houses and a small frame house 8 × 10 feet. The property was used by Defendants in the operation of a restaurant, service station, wrecker service and overnight facilities for truck drivers. The property expropriated in these proceedings was a strip across the entire front portion thereof by a depth of 33.98 feet on *654 the east line and a depth on the west line of 38.43 feet. The right-of-way extended through the main building and required, as well, the removal of other improvements on the premises.
No issue was made by Defendants with respect to the Department's right to expropriate the subject property, therefore the only question before the Court for ascertainment is one of quantum.
The certificate executed by the appraisers, Mr. Lowell M. Roseman and Mr. Leroy Frantom, and attached to the petition certified the value estimated by the Department at $54,476, itemized as follows: land and improvements $48,750; damages, $5,726; total $54,476.
The answer of Defendants as their claim to the value of the property expropriated was itemized as follows: value of land and improvements, $73,790; severance damages $11,375; total $85,165.
At the outset of the trial two procedural points were raised. Counsel for Plaintiff contended that the burden rested upon Defendants to prove the amount of their claimed compensation in addition to that deposited by the Department as representing the just compensation to which they were entitled and, in accordance with such contention, the Trial Court ordered Defendants to proceed initially with the presentation of their case. Classically, according to Articles 476, 477 and 485 of the Code of Practice (effective at the time of this trial) and presently, according to LSA-Code of Civil Procedure, Article 1632, a normal procedure of a trial contemplates the presentation of evidence of plaintiff and of the defendant, in that order. Article 1632 of LSA-C.C.P., enacted following trial of this case, expressly permits the Court to vary this order when circumstances justify. In view of the language of the Succession of Robinson, 186 La. 389, 172 So. 429, we are of the opinion that prior to the enactment of the new Code, the trial courts were, in their discretion, permitted to vary the order. Perhaps the only damage to Defendants by the reversal of the procedure of the presentation of the case resulted from the fact that upon opening their case Defendants called Mr. Leroy Frantom for cross-examination. Upon objection of counsel for the Department, the Trial Court refused to permit Defendants to call Mr. Frantom for cross-examination and Mr. Frantom was never called as a witness by Plaintiff, though he was present in the courtroom during the trial. Mr. Frantom had been employed by the Department to appraise the subject property and had signed a certificate in which the estimated value of the property expropriated was fixed by him at $54,476. In its written reasons for judgment the Trial Court expressed the view that in its opinion Mr. Frantom could not be called for cross-examination and it being its belief that the Department would call Mr. Frantom as a witness, the Defendants would be afforded an opportunity to cross examine him. Thus, had Defendants been permitted to present their case after Plaintiff, if the Department did not call Mr. Frantom as a witness, it would have been obvious that Defendants were being denied their right to cross examine Mr. Frantom. The Defendants had a right to call Mr. Frantom for cross-examination as was held by us in the case of State of Louisiana, through the Department of Highways v. Kurtz, La.App., 143 So.2d 761, wherein we held that an appraiser employed by the Department of Highways to examine the property subject to the expropriation was an agent or representative of the Department of Highways for the purposes of cross-examination, even if at the time of the trial he was no longer employed. Inasmuch as Mr. Frantom fixed the value of the property expropriated at $54,476 in the certificate executed by him and in view of the award which we have concluded to adjudge to be a fair compensable value of the property expropriated being in excess of said amount, no useful purpose would be served by remanding the case for taking the testimony of Mr. Frantom *655 as Defendants thereby suffer no damage. Nevertheless, we believe the ruling of the Trial Court requiring Defendants to proceed first with their proof to be correct. Under LSA-R.S. 48:453 reading as follows:
"The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
"Damage to the remainder of the property is determined as of the date of the trial.
"In either case the defendant has the burden of proving his claim. Added Acts 1954, No. 107, § 1."
the issue squarely placed before the court in an expropriation proceeding where defendant maintains the estimated compensation deposited in the court is inadequate is the determination that such amount is inadequate to the extent of the difference proved by defendant to exist between the market value and damages to the remainder of the property. Thus, though ordinarily the requirement is placed upon the plaintiff to produce the evidence in support of his claim and then the defendant to go forward with his proof, it appears it is proper that the defendant first present evidence showing wherein the estimated amount deposited in the court in compensation of the property expropriated is inadequate. Under the pleadings the condemning authority cannot produce evidence for the purpose of lowering the estimated amount deposited in the court as a value of the property taken, but such evidence, if it be by witnesses as in this case expressing views that the value is less than the estimated deposit, is admissible for the purpose of showing only that the estimated deposit is adequate.
Though Defendants contended the land fronted on the highway proper, the evidence reveals that prior to the taking there was a right-of-way between the property and the highway which was hard surfaced with blacktop and which was used by Defendants as a parking area without objection by the zoning authorities, though, of course, Defendants had no title to said property. Following the expropriation the remainder of the property fronted on an access road parallel to the highway. Approximately 25% of the lot was expropriated. It was conceded by each of the witnesses that the property prior to the expropriation was being utilized for its best use. Subsequent to the expropriation Defendants have rebuilt their restaurant and are conducting essentially the same sort of business since the taking with the exception that because of the diminution of the size of the lot there is no longer available room for bunk houses and to some extent the accessibility of the remainder of the property is not as advantageous for use as a service station and truck stop as before the expropriation.
The compensation due the owner of expropriated property is the market value, which has been defined as that price which would be agreed upon on a voluntary sale between a willing seller and a willing purchaser. Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State Through Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20.
The jurisprudence of this State recognizes that the best measure of compensation or market value is obtained through the use of comparable sales. However, in the absence of such comparable sales, a valuation based upon rental income from the property may be resorted to, and further, even where there are comparable sales, utilization of the rental income may be resorted to for the purpose of supplementing the appraisal. The income approach to property evaluation has for its basis the ability of the property to produce rent and does not contemplate the particular ability of the occupant of the property to conduct a profitable business. Mississippi River Bridge Authority v. Curry, 232 La. 140, 94 So.2d 9; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853.
Defendants called Messrs Kermit Williams and W. D. McCants who testified as *656 expert appraisers on their behalf. Messrs J. Clifford Doiron, Leroy J. Cobb and Lowell M. Roseman testified as expert appraisers on behalf of the Department of Highways. In three volumes of testimony each of these witnesses gave meticulous and well-reasoned estimates for their values of the subject property. All five of the appraisers evaluated the property on the basis of comparable sales in the area within a three year period. They arrived at their estimate of the value of the raw or vacant land by adjusting comparable sales and giving consideration to the favorable and unfavorable variables inherent in Defendants' property. Each of the appraisers then evaluated the reproduction cost, less depreciation, of the improvements. Each computed the value of the land remaining after the taking and all but one of the appraisers deducted from that value the amount of the severance damage to the remaining land as a result of the expropriation. Therefore, each added the replacement cost of improvements, less depreciation, to the value of the raw land taken, to this subtotal they added the depreciated value of the remaining land or severance, if any, and arrived at a total value of the improved land taken, plus severance damage or the just compensation to which they believed Defendants were entitled.
As a supplement to their estimation, each appraiser applied the income approach to the land and its improvements. Defendants' appraisers interpreted the income approach to mean the net operation and profits, capitalized, resulting from the use of the land as indicated by an average computation of Defendants' income tax returns for the years 1957 and 1958. The Department disputing this method of computing the income approach relied upon estimated rental value, capitalized, of the land and its improvements. Though the use of the actual income received by the occupants of the business is relative, we are of the opinion that the Department's objection to the use of such method is well taken and little effect can be given to such factor for the reason the State has not expropriated the business of Defendants but only the land and improvements. Variables involved in the operation of a business are too numerous to provide a sound basis for evaluating the land on which the business is conducted. There is no yardstick by which the acumen or particular skill and management of the operator of the business may account for the profits therefrom. In the proper hands the same business at the same location may be operated profitably by one and unsuccessfully by another. The rental income method computed by each of the Department's appraisers appears to have a more accurate basis; however, inasmuch as there appears to have been comparable sales of property which could be utilized to determine the market value of the subject property and the improvements could be evaluated accurately by reproduction, less depreciation cost, it appears to us that such method is the one which should be adopted to arrive at the value of the subject property. The Trial Judge accepted Defendants' appraisals based upon income tax returns. We believe it is sound to disregard both the income tax and rental income approach in the light of the fact there is an abundance of testimony based upon more acceptable methods.
Counsel for the Department urged us to disregard efforts on the part of Defendants' appraisers to evaluate the inaccessibility of Defendants' property by truckers as damages. Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616, establishes that in expropriation cases damages suffered as a result of the diversion of traffic are not compensable. The fact that Defendants' property is now located upon an access road rather than fronting upon the main highway as it did prior to the expropriation is not a compensable damage as a circuitous route, according to the Patin case, is not sufficiently damaging. However, the record in this case discloses that Defendants are not only faced with a circuitous route but due to the reduced square footage of their remaining property trucks *657 which frequented their premises before the taking have difficulty in being maneuvered in and out of the property. No longer is there sufficient room to provide bunk houses as an attractive inducement to truck drivers to stop at this location; there appears to be no longer sufficient area for trucks to park on the property without interfering with the use of the other facilities thereof. We are of the opinion such facts justify an award to Defendants of damages therefor inasmuch as such interference is more than a mere diversion of traffic but undeniably reduces the value of the remaining part of the lot after the expropriation.
Mr. Kermit Williams, called by the Defendants, appraised the value of the total land of which a part was taken in this expropriation proceeding at the sum of $37,750 or $50 per front foot; his valuation of the improvements, less depreciation, was $42,748; giving consideration to the severance damage, he valued the remaining land at $11,325; using a method which he described as the 4, 3, 2, 1 system (which means, beginning at the front of the property 40% of the value of the lot is attributed to the first ¼ thereof; 30% to the second ¼ thereof; 20% to the third ¼ thereof and 10% to the remaining ¼) he arrived at a value of $15,100 for that portion of the raw land expropriated; by this method he arrived at a valuation of the total property expropriated, including damages, of $69,173. His arrival at the value of $250 per front foot resulted from his comparison with other sales of property in the area and adjusting same upward where the sales had taken place prior to the expropriation of the subject property because of the increase in value in the period of time, together with consideration of the location of the property. He was of the opinion that because of the nature of this property, the business thereon, it would be more realistic to use an income approach value to arrive at his appraisal. For this purpose, from the income tax reports of Defendants the average income for each of the two years he considered was $19,500. He allowed $800 per month for management for Mr. Lewis and his wife, which left a net income before depreciation of $9,900; he attributed 6% of $37,750 arrived at by him as being the value of the raw land before the expropriation as an allowance for the use of the land in the business, which amounted to the sum of $2,265, leaving a net income imputable to the building facilities of $7,635; he then capitalized that building, using 6% interest of risk rate and 7% depreciation rate, making a total of 13% capitalization of income stream of $7,635, which indicated a value to the buildings of $58,790; adding this sum to the value of the land of $37,750 gave a value of $96,540 from which he deducted the depreciation loss of the remainder of the lot of $11,325, leaving a net value of the property expropriated of $85,215. As previously expressed, this method of appraisement with the many variables to be considered does not present a sound basis on which a market value of the property may be arrived at in our opinion.
Mr. McCants, on behalf of the Defendants, valued the totality of the raw land belonging to the Defendants at $36,240 or $240 per front foot; on the improvements, less depreciation, he placed a value of $37,974; the loss by depreciation of the remaining land, he estimated at $8,697; his value of the raw land expropriated herein was determined by utilizing the same method as did Mr. Williams, that is the 4, 3, 2, 1 method, and 40% of the whole value attributed to the lot by him is $14,496, making a total of $61,168. Likewise, Mr. McCants utilized the income approach based on the income tax reports of Defendants and arrived at a value of $62,575 as a value of the improvements on the property which, added to his valuation of $36,240 as the value of the land, gave a total of $98,815, from which he deducted the sum of $13,046 as his appraised value of the remainder of the property left to Defendants, making a net valuation utilizing this method of $85,769.
Mr. Clifford Doiron, called by Plaintiff, was of the opinion that the 4, 3, 2, 1 depth *658 survey utilized by Defendants' appraisers were outmoded and unwarranted. He expressed the view that historically the method came into use in determining values of one-story buildings in which merchandise was sold wherein the values were placed on the portions of the property closest to the front thereof in accordance with that table. For his part he devised a depth survey by reducing comparable property to that of the subject property and arrived at his values thereby. Mr. Doiron's value of the whole property was $45,222 before the taking. He valued the whole of the raw land before the taking at $16,613; his value of the portion of the land taken, before the taking, was $4,975, leaving a value of $11,638 as the value of the remainder before the taking; he valued the remainder after the taking at $14,350; he was of the opinion that inasmuch as the value of the remainder after the taking was in excess of that value of said remainder prior to the taking, there was no severance damage; to the value of the part of the land taken, that is $4,975, he added thereto his estimated value of improvements amounting to $28,609, making a total value of all of the property expropriated of $33,584; from this he deducted $1,100 as the value of airconditioning units removed by Defendants from the property, leaving a round figure total value of the part taken of $32,500; he estimated the depreciated replacement cost of the improvements to be $30,896; he added this amount to the land value estimate and arrived at the valuation of $47,500 for the totality of the property. His method of "income approach" consisted of determining by comparison rentals paid for what he considered comparable properties and arrived at a figure of $3,147 as attributable to rentals for the improvements on the property which, having estimated the remainder economic life of same to be 20 years, he divided 11% into the income attributable to the building only, before depreciation, and arrived at an indicated value of $28,600, which, added to $16,613, gave an indicated value estimate by using the income approach of the entire property of $45,213 which he rounded out at $45,250. His valuation of the land itself was at $110 per front foot.
Mr. Cobb, called by the Department, gave a total value of the raw land of $26,425 or $175 per front foot; his valuation of the improvements, less depreciation, was $38,200; the loss by depreciation of the remaining land was fixed by him at $8,000; the value of the raw land actually expropriated was appraised at $6,350; the total appraisal value of the taking and damages resulting from this expropriation, according to Mr. Cobb, was $52,550.
Mr. Roseman, called by the Plaintiff, placed a value of $22,650 as the total value of the raw land prior to the expropriation, or $1 per square foot for the entirety; the value attributed by him to the land actually expropriated, same being 5,427 square feet at $1 per square foot, was $5,427; he considered the improvements as a whole, the buildings, walks, driveways and other outbuildings on the property, less depreciation on said improvements, which he valued at $39,460, to this figure he added $1,500 as the value of neon signs; these valuations added to the valuation placed by him on the land gave a total value of $63,610. From this figure he deducted $8,611 as depreciation to the land remaining to Defendants (though he subsequently testified such figure should be correctly categorized as damages); he then depreciated the remaining improvements on the property $2,886; the total damages found by him was therefore $11,497 which he deducted from $63,610 to arrive at a value of $52,113 as compensation to Defendants for the land, buildings and damages.
Mr. Williams and Mr. McCants evaluated the land which was taken, being 25% of the whole, to be worth 40% of the entire tract. In view of the fact that Defendants still retain the same length of front footage, we are of the opinion that this percentage for the taking is overly generous. Certainly their evaluation must be adjusted *659 to the particular property, especially in view of the fact that they have deducted severance damage which, in part, included the fact that the original frontage had been removed from the property. Mr. Roseman in evaluating the property on the square foot basis rather than on front footage would attribute to each square foot of the lot equal value. It does not appear to be realistic that if the Department were expropriating the rear 25% of the property in question their evaluation of such portion would be the same as the front portion. Though it does not appear that an estimate of 40% as the value of the front 25% of the lot is warranted, a reduction to 25% of the whole, as contended by the Department's appraisers, likewise would not, in our opinion, present an accurate value of the front portion of the property. Mr. Doiron's view that the Defendants incurred no severance damage is refuted by the evidence showing the accessibility to the property had been reduced and the reduction in size of the remaining portion of the lot made impossible the same services offered to the public by Defendants prior to the taking, particularly in the inability to provide bunk houses and the curtailment of parking facilities.
The difficulty of arriving at that nebulous value which is determined to be the market value of expropriated property is pointedly illustrated in this case by the fact that here we have five expert appraisers in whom we have confidence in their ability, integrity and honesty, and yet, as may be seen by glancing at their appraisals, there is considerable divergence in opinion as to the value of the property expropriated. Upon weighing the testimony of each of the experts and taking into consideration the details making up each total, giving consideration to the comparables relied upon in the appraisals, and not seeking to substitute our values for those expressed by the appraisers but arriving at a value we believe to be supported by all of the evidence, we are of the opinion that a total award to Defendants of $62,351.25 is adequate and proper. We arrive at this figure in this manner: the total value of the raw land prior to the taking, in our opinion is $33,975 or $225 per front foot; 35% of said amount, or $11,891.25, is a fair computation of the value of the raw land taken; $39,460 appears to us to be a fair valuation of the improvements; $11,000 we believe to be adequate to compensate Defendants for the severance damage sustained to the remaining property by the taking, which figures give a total valuation of the property expropriated of $62,351.25.
For the reasons assigned, the judgment of the Lower Court is amended, and it is ordered, adjudged and decreed that there be judgment herein awarding to Defendants the sum of $62,351.25. Inasmuch as Defendants have withdrawn from the registry of the court the original deposit and the additional amount allowed by the Trial Court, no interest is awarded.
Amended and affirmed.

Supplemental Opinion
PER CURIAM.
In our opinion in this case, on page 655 thereof, we said:
"* * * Under the pleadings the condemning authority cannot produce evidence for the purpose of lowering the estimated amount deposited in the court as a value of the property taken, but such evidence, if it be by witnesses as in this case expressing views that the value is less than the estimated deposit, is admissible for the purpose of showing only that the estimated deposit is adequate."
We are in error in this conclusion inasmuch as LSA-R.S. 48:456 specifically provides:
"* * * If the compensation finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess."