687 P.2d 1261

**The STOCKHOLDERS AND SPOUSES OF CARIOCA COMPANY, et al., Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable William T. Moroney, a judge thereof, and City of Tempe, Arizona, real party in interest, Respondents.**

**No. 17414–SA.**

Supreme Court of Arizona,
In Banc.

Sept. 5, 1984.

Beus, Gilbert, Wake & Morrill by J. Tyrrell Taber, Michael N. Widener, Phoenix, for petitioners.

C. Brad Woodford, Tempe, for respondents.

CAMERON, Justice.

The petitioners, the stockholders of Carioca Oil Company (Carioca), brought this petition for special action from an adverse ruling by the respondent judge in an action by the City of Tempe condemning petitioner's land. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and Rule 8, Arizona Rules for Special Actions, 17A A.R.S.

We must answer only one question on appeal and that is, did the trial court err in not allowing Carioca to introduce evidence concerning the rental value of Carioca's lease with Union Oil Company of California?

The facts follow. Carioca owned land on the southeast corner of Baseline and Kyrene Roads in Tempe which contained a gasoline station and a car wash. The car wash was leased to another party for $900 per month. Carioca leased the station to Union Oil pursuant to a "Service Station Site and Facilities Lease." The term of the lease was from 1 May 1981 to 1 May 1991, and the lease provided a month-to-month tenancy for any holdover after that date. As rent, Union agreed to pay Carioca two cents per gallon for each gallon of gasoline delivered to the site. The lease provided that should the parcel or any part thereof be taken in a condemnation proceeding, the lease could be canceled at the option of Union. The lease also provided for unilateral cancellation on or after the fifth year by giving twelve months notice, and granted Union a preferential right to purchase the property should petitioner sell.

In conjunction with the site and facilities lease, the parties entered into a "Service Station Lease," under which Carioca "leased back" the station from Union for $100 per month. The provisions of this lease provided that either party could cancel with or without cause by giving a ninety-day notice. The lease term was from 1 June 1980 to 31 May 1983 and also contained a condemnation clause. Carioca could only assign the lease with Union's prior, written permission. Also, if Union decided to leave the area after a good faith business decision, Union could cancel.

Carioca received many advantages from this arrangement with Union Oil, including a better assurance of supply, a major brand image, the benefits of Union's advertising, high quality gasoline in comparison to competitors, a free credit card program, free signs and fixtures, and gasoline sold in temperature corrected form.

Under its power of eminent domain, the City of Tempe condemned the property to widen Baseline Road. Pursuant to A.R.S. § 12–1116 the parties entered into a stipulation for immediate possession and Tempe posted a bond for $185,000. Union Oil canceled the leases. Union had a no-growth policy in Arizona, and therefore would not transfer the agreement to another location. Carioca attempted to obtain another major brand fuel contract but was unsuccessful. Since the contracts with Union were non-assignable and non-transferable, Carioca lost not only part of the land, but a favorable lease as well.

Prior to trial the depositions of the parties' appraisers were taken. As a result, Tempe filed a motion in limine to exclude evidence of the value of the lease contract at the trial. The court held:

> [Tempe's] Motion in Limine asks that the Court rule that [Carioca] can not present evidence of the value of its contract with Union Oil. The Court holds that the income approach is not authorized in evaluating the subject property in this case. [Tempe's] Motion in Limine is therefore granted.

From that ruling, Carioca brought this petition for special action. We granted the petition because this is a question of statewide importance and because there is no plain, speedy, or adequate remedy by appeal.

The issue before the trial court, as it is in any condemnation of land, was the fair market value of the property taken, or the price at which a willing seller will sell to a willing buyer. *Defnet Land & Investment Co. v. State*, 103 Ariz. 388, 389, 442 P.2d 835, 836 (1968).

R. Veldon Naylor appraised the property for the City of Tempe. He used the market data approach, the income approach, and the cost replacement approach. Under the market data approach, Naylor compared sales of other service stations in the area and concluded the property was worth $188,000. He capitalized the net annual business income of the station at twelve per cent and arrived at a value of $184,500. Naylor next considered the cost of replacing the station with a newly constructed station, deducted the depreciation due to age, etc., and arrived at a value of $204,600. He then used a weighted formula, giving additional weight to the market and income approach, and valued the property at $187,000.

Robert Blake appraised the property for Carioca. He used (1) a combination approach and (2) an income approach. Under the combination approach, he valued the bare land at $100,000 by comparing sales of other unimproved land in the area. He valued the improvements at $300,000 based on cost of replacement less twenty per cent depreciation. He then valued the franchise agreement with Union by allotting two cents per gallon as the value of the brand name (branded gasoline can be sold for two cents more per gallon), calculated the yearly income attributable to the agreement if the station were selling 150,000 gallons per month, capitalized at eighteen per cent, and arrived at a rental value of $200,000. He added those three amounts together and appraised the property at $600,000.

Under the income approach, Blake testified that service stations usually sell for three cents per gallon pumped, capitalized annually. (One cent for land, two cents for improvements.) He calculated the yearly income for the sale of gas and rental of the car wash, deducted expenses, capitalized at twelve per cent, and valued the land and improvements at $403,000. He then added the value of the franchise agreement ($200,000) and appraised the property and the two leases at $603,000. He explained that he capitalized the agreement at a higher rate because there is more risk involved, i.e. the oil company "can cut you off from your contract." Nevertheless, he assumed in his calculations that the contract would be renewed.

The trial court, relying upon *City of Scottsdale v. Eller Outdoor Advertising Company of Arizona, Inc.*, 119 Ariz. 86, 579 P.2d 590 (App.1978), stated that while the income approach was available in certain situations, "the land must be income producing, rather than land upon which there is a business producing income." The trial court also saw a distinction between the inability to continue the business "because of action by the State, as opposed to the destruction of a [contractual] relationship between non-government entities." The trial court held that "in the present case, * * * [Carioca's] relief lies in its contract with its supplier, and not with a different valuation standard than that which was contemplated by the statute."

We believe that the trial court misinterpreted *Eller*, supra. In *Eller*, the City of Scottsdale condemned land on which Eller had placed billboards under an agreement with the prior owner. After the city had obtained the land, it then sought to condemn the billboards. A city ordinance prevented the erection of any new billboards, so by condemning Eller's six billboards Eller lost any chance to further compete in that part of the Scottsdale market. Eller's expert testified as to severance damages and used an income approach to valuation. The Court of Appeals held that, because the property was personalty, no severance damages could be awarded. As to the use

of the income approach to valuation, the court stated:

> [T]he income approach to appraising is subject to several important limitations. First, the property itself must be income producing rather than simply income being produced by a business being conducted thereon. *Levitin v. State*, 12 A.D.2d 6, 207 N.Y.S.2d 798 (1960); *State v. Lewis*, 142 So.2d 652 (La.App.1962).
>
> Second, insofar as billboards themselves are concerned, if the billboard can be relocated in the same area, an income approach to appraising is improper.

*Eller*, supra, at 93–94, 579 P.2d at 597–98.

■ It is noted that the two cases cited above in *Eller* do not support the City of Tempe's contention that the income approach is not appropriate in this case. In *Levitin*, the state condemned vacant land next to the landowner's motel. The landowner attempted to introduce evidence of the probable rental value if the land were improved, which was disallowed by the court. In *Lewis*, the court held that the estimated rental value, capitalized, was a better method for determining value than the profits, capitalized, method. The court further held:

> The jurisprudence of this State recognizes that the best measure of compensation or market value is obtained through the use of comparable sales. However, in the absence of such comparable sales, a valuation based upon rental income from the property may be resorted to, and further, even where there are comparable sales, utilization of the rental income may be resorted to for the purpose of supplementing the appraisal.

*Id.* 142 So.2d at 655. We do not believe that *Eller*, *Levitin*, or *Lewis* hold the income approach is inappropriate in the present circumstances. Because of its corner location, the real property in this case produces rental income rather than merely being the situs for a business that produces income. Thus, the income from the property is an element that may be considered in determining the reasonable value of the land. As has been noted:

Income from existing use.

> Consideration of actual or existing income from property as a *basis* for the valuation of such property has met with conflicting judicial reactions. Although generally accepted as an *element* to be considered in the determination of value, use of such a criterion as the sole basis for valuation is predicated upon the concept that the prime and fundamental consideration of property is its status as a producer of rent or income. Thus, it was not error for an expert to allude to gross receipts from rent of hotel rooms, since that figure was used as a basis to determine what a hotel operator would pay the owner.

4 Nichols on Eminent Domain, § 12–312[1] (3d ed. 1981) (footnotes omitted).

■ Cited by Nichols, supra, is a similar case written by the Alabama Supreme Court which states:

> Where the rental value of property containing a service station is, according to acceptable standards of the trade, a basis for determining fair market value of the land and improvements and that rental value is established by the use of a formula based on gallonage sold per month, and not on the amount of profits the business might produce, then evidence of the rental value so established is admissible.

*Kayo Oil Co. v. State*, 340 So.2d 756, 759 (Ala.1976). As stated above, compensation for condemned property is determined by the market value of the property taken, or the price at which a willing seller will sell and a willing buyer will buy. *Defnet*, supra, at 389, 442 P.2d at 836. Rental income produced by the property will affect the price a willing buyer would pay and a willing seller would accept, and therefore is a proper element to consider when valuing property. *See* Note, Annotation, 65 A.L.R. 455. We believe it was error to grant the City of Tempe's motion in limine.

Prayer for relief granted.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

**510**

Note: Justice Stanley G. Feldman did not participate in the determination of this matter.