**William SCULLY and Jane A. Scully,**
**Appellants,**

v.

**UNITED STATES of America, Clifton H.**
**Meisinger and Ophelia Meisinger,**
**Appellees.**

**No. 10144.**

United States Court of Appeals
Tenth Circuit.

March 28, 1969.

Rehearing Denied April 29, 1969.

---

George C. Spradling and Ronald M. Gott of Lilleston, Spradling, Gott, Stallwitz & Hope, Wichita, Kan., for appellants.

Paul L. Aylward of Miner & Aylward, Ellsworth, Kan. (David W. Wheeler of

Wheeler, Westerhaus & Wheeler, Marion, Kan., on the brief), for appellees Clifton H. Meisinger and Ophelia Meisinger.

A. Donald Mileur, Atty., Dept. of Justice, Washington, D. C. (Clyde O. Martz, Asst. Atty. Gen., Washington, D. C., Benjamin E. Franklin, U. S. Atty., Patrick A. Monahan, Asst. U. S. Atty., Topeka, Kan., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee the United States.

Before HILL and HOLLOWAY, Circuit Judges, and BRATTON, District Judge.

HILL, Circuit Judge.

In order to construct the Marion Dam and Reservoir the United States filed a declaration of taking under authority of 40 U.S.C. § 258a to condemn an area of land located within the District of Kansas. Included within the designated acreage was a 320-acre farm owned in fee by appellant Scully and leased to appellee Meisinger. Pursuant to Rule 71A (h), F.R.Civ.P., the district judge constituted a commission to determine the just compensation to be paid for the property. The commission conducted hearings, determined the sum to be awarded, and apportioned the total between the respective interests of the lessor and lessee. The district court approved the Report of the Commission and pursuant to Rule 54(b), F.R.Civ.P., entered a final judgment as to the two tracts of land here concerned.

The lessor, William Scully, appeals from that part of the judgment apportioning the award between the landlord and tenant, contending that the commission was improperly instructed as to the factors to be considered in determining the value of the leasehold interest. Since the parties do not contest the propriety of the aggregate amount awarded, the United States appeared merely to request that the total award be approved and to indicate that it has no interest in the division of the award between the parties.[1]

The lessor, and his father before him, have owned and controlled a vast amount of farmland throughout the general area. Much of the land is leased to tenants such as appellee Meisinger who have occupied the same tract for many years. Despite the fact that all of the leasehold agreements provide for one year terms that cannot be assigned without the written consent of the lessor, a market for the Scully leases has developed. This market development stems from the high fertility of the land, lenient rental provisions, and the practice of the lessor in routinely extending or renewing all leases even though they do not contain renewal provisions. As a result of this unusual background, a dispute arose as to the proper value to be placed upon Meisinger's leasehold estate. He asserted that in view of the fact that he had occupied much the same land [2] from 1936 until the time of the filing of the declaration of taking on June 21, 1965, his leasehold should be valued as something more than a mere one year term.[3] The

---

1. In a condemnation proceeding "one award as just compensation for the entire value of the land is made and it stands in place of the property appropriated as the equivalent thereof. The distribution of the award between the owners of separate interests or estates is a matter wholly between them and the public is not concerned therewith." Bogart v. United States, 169 F.2d 210, 213 (10th Cir. 1948).

2. Meisinger, as lessee, first acquired one-half of the present farm in 1936. Later, in 1948, he acquired a contiguous leasehold and has operated the two tracts as a unit since that time.

3. It is undisputed that the lessee has occupied the land under a succession of agreements not unlike the one in effect when the condemnation occurred. This last lease was executed in November, 1964, and provided "for a term of one year commencing March 1, 1965, and ending the last day of February, 1966." The lease made no mention of the right of renewal although some of the previous contracts did indicate that "nothing contained in this lease shall be construed to create a tenancy longer than the one year term herein specified."

lessor resisted, contending that the tenant's rights should be governed by the terms of the written lease agreement. The district court rejected this contention by advising the commission, in instruction number 13, that:

"In determining the value of the tenant's leasehold interest under the Scully lease, you are instructed that even though the lease by its provisions provides for a term of limited duration, the landlord and the tenants are presumed to have made the lease contract with reference to any established custom and usage which pertains to the subject of the contract and in this connection, you may consider the established methods and practices, if any, adopted and followed by the landlord and his predecessors in interest in their dealings with tenants over a long period of years. Such matters, if established by the preponderance of the evidence and shown to have been taken into account by the parties on purchase or sale of the leas-

es, are proper matters to be considered in determining the value of such leasehold interests."

Following that instruction, the commission received evidence as to the market value of comparable sales of Scully leases, and assigned $7,872 as the compensable value of the appropriated portion of the leasehold.[4]

Although a determination of the type and extent of the property interests taken upon an exercise of the federal power of eminent domain is governed by federal law, the courts will normally look to the law of the state where the property is located in order to ascertain the relative rights of a lessor and lessee.[5] The lessee thus points to Berg v. Scully, 120 Kan. 637, 245 P. 119 (1926) as authority for the proposition that the practical construction placed upon the lease by the parties becomes "a part of it to the same extent as though written therein." *Id.* at 120. The court in Berg was confronted with an entirely different situation than is

4. The commission made the following findings:

| | |
|---|---|
| Value of unimproved land before taking | $84,750 |
| Value of land remaining after taking | 35,550 |
| Value of land taken (including severance damage) | $49,200 |
| | |
| Value of improvements before taking | $13,250 |
| Value of damage to those taken | 3,750 |
| Value of damage to those remaining | 3,622 |
| Total damage | $ 7,372 |
| | |
| Value of lease before taking | $13,560 |
| Value after taking | 5,688 |
| Total damage | $ 7,872 |
| | |
| Total award to lessee | $15,244 |
| Total award to lessor | 41,328 |
| Total award | $56,572 |

An explanation for the separate valuation of the improvements is found in the fact that the lease expressly provided that all improvements on the land belonged to the lessee and constituted his separate personal property.

———◆———

5. Cf. United States ex rel. and for Use of Tennessee Valley Authority v. Powelson, 319 U.S. 266, 279, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); United States v. Causby, 328 U.S. 256, 266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); United States v. Certain Property, 306 F.2d 439, 444 (2d Cir. 1962); Adaman Mutual Water Co. v. United States, 278 F.2d 842, 847 n. 4 (9th Cir. 1960).

presented here. There the question concerned the right of a lessee to recover for improvements placed upon leased property. In deciding in favor of the lessee the court went outside the written lease to ascertain the intent of the parties. It was then concluded that the lessor's duty to cooperate with the lessee "was within the fair interpretation of the contract—certainly as against a demurrer to the petition * * *." *Id.* at 122. It is abundantly clear that to read a right of renewal into the present lease would not be a fair interpretation, even in view of an understandable sympathy for the lessee in this context. It is one thing to rely upon custom and usage to clarify incidental problems of lease interpretation, but it is quite another to extend the term or duration of the tenancy through such dubious means. Aside from the obstacle presented by the Statute of Frauds, it is necessary to reflect upon the additional confusion that would be created if all leasehold estates were extended in the face of explicit language to the contrary. The effects of such a policy upon the stability of leasing arrangements is obvious. There is little wonder that the lessee has been unable to cite even one instance in which a court has so held. The present lease provides "for a term of one year commencing March 1, 1965, and ending the last day of February, 1966." To say that it is a fair interpretation to lengthen the clear and unambiguous term provided in the lease, would be tantamount to a judicial revision of the lease agreement and cannot be condoned.[6]

The lessee contends in the alternative, that even if his leasehold estate is viewed as a simple one year term, he is nevertheless entitled to recover the amount that would have been received had the lease been sold in the open market. Essentially, the argument is that the likelihood of renewal added to the value of the lease; the Government's obligation in fixing a just compensation is measured in terms of market value; the renewal expectancy is reflected in the fair market value and therefore must be recoverable. This argument has been considered in United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946), where the Supreme Court noted that "the fact that some tenants had occupied their leaseholds by mutual consent for long period of years does not add to their rights." *Id.* at 380 n. 9, 66 S.Ct. at 601. The Court quoted with approval, and at some length, from Emery v. Boston Terminal Co., 178 Mass. 172, 59 N.E. 763 (1901), where Holmes, J., determined that the compensation to be paid for the condemnation of property held by a lessee could not include the value of an expectancy that the short term tenancy would be renewed. Just as in the case at bar, the owner's habit of renewing the lease prompted the lessee to assert a claim for the enhanced value of the leasehold. The Court declared: "Changeable intentions are not an interest in land, and although no doubt such intentions may have added practically to the value of the petitioners' holding, they could not be taken into account * * *. They added nothing to the tenants' legal rights, and legal rights are all that must be paid for. Even if such intentions added to the saleable value of the lease, the addition would represent a speculation on a chance, not a legal right." *Id.* at 765. We conclude that the lessee of a one year term is not entitled to recover the market value added by a mere expectation that the lease will be renewed. 2 Nichols, The Law of Eminent Domain, ¶ 5.23[4], p. 71 (1963).

The district court's instruction to the commission was in error and

---

6. "In construing a contract, the duty of the court is to determine what the contract is and not to make a new one for the parties." Filtrol Corp. v. Loose, 209 F.2d 10, 12 (10th Cir. 1953); Frankfort Oil Co. v. Snakard, 279 F.2d 436, 444 (10th Cir. 1960).

the value of the leasehold must be re-examined within the framework of the existing total award which cannot now be disturbed. The commission should be instructed[7] that the "measure of damages is the difference between the value of the use and occupancy of the leasehold for the remainder of the tenant's term * * * [and] the agreed rent which the tenant would pay for such use and occupancy." 327 U.S. at 381, 66 S.Ct. at 601. By the remainder or unexpired portion of the lease is meant that period from the date of taking to the expiration of the term.[8] In this case, from June 21, 1965, through the last day of February, 1966.

 We must also acknowledge that the value the commission placed upon the tenant's improvements seems, to some extent, to have been affected by the erroneous leasehold valuation.[9] It appears from the record of the commission's proceedings, that the buildings and other improvements contributed by the lessee were valued after an analysis was made of comparable sales of Scully leases. The total sales price paid for other leaseholds was then apportioned into an amount estimated to have been the sum paid for improvements, with the remainder being attributed to the leasehold itself. This does not mean, as is urged by the lessee, that the full amount of the comparable sales prices should now be taken to have been paid for the improvements only. The purchasers undoubtedly paid for the renewal expectancy which had a practical, if not a legal value. Thus, the true value of the improvements should not be affected by the fact that the renewal expectancy value cannot be recovered in this suit.[10] Nevertheless, to avoid even the possibility that the misconceived leasehold evaluation may have contributed to an improper appraisal of the worth of the improvements, both the leasehold and the improvements should be reevaluated.

The part of the Judgment and Order of the district court adopting the Commission's valuation of the lease and improvements and Order of Distribution are therefore vacated and the matter is remanded with instructions to proceed in accordance with this opinion.

7. There will, of course, be no need to instruct a commission if upon remand the district court chooses to conduct the inquiry without the assistance of a commission.

8. The date of taking under the Declaration of Taking Act, 40 U.S.C. § 258a, is the date of the filing of the declaration of taking even though the actual physical ouster occurs thereafter. United States v. Dow, 357 U.S. 17, 23, 78 S.Ct. 1039, 2 L.Ed. 2d 1109 (1958); United States v. Sowards, 370 F.2d 87 (10th Cir. 1966); Travis v. United States, 287 F.2d 916, 152 Ct. Cl. 739 (1961). See Annot., 36 A.L.R. 2d 337 at 447–462 (1954).

9. "The Commission finds, under Instruction No. 13, that the evidence showed that there was in the community an established custom and usage whereby the Scully leases had a pecuniary value and were traded and sold in the community and recognized as having value over and above the value of the improvements. That, in any event, if such custom and usage does not override the terms of the one-year leases, it was clearly evident that the personal property of the tenant, which included all improvements upon the land of the landowner, had a greater value than similar improvements situated on land which was not leased as Scully land was leased."

10. For a discussion of the problems involved in appraising improvements for condemnation purposes, see Annot., 3 A.L.R.2d 286 at 299 (1949), and Annot., 1 A.L.R.2d 878 (1948).