456 P.2d 868

STATE of New Mexico ex rel. STATE HIGHWAY COMMISSION of New Mexico, Petitioner-Appellant and Cross-Appellee,

v.

Enrique CHAVEZ and Isabel Chavez, Defendants-Appellees and Cross-Appellants.

No. 8684.

Supreme Court of New Mexico.

June 9, 1969.

Boston E. Witt, Atty. Gen., Joseph L. Droege, Sp. Asst. Atty. Gen., Santa Fe, for appellant and cross-appellee.

Lorenzo A. Chavez, Melvin L. Robins, Albuquerque, for appellees and cross-appellants.

PER CURIAM.

Upon consideration of Motion for Rehearing, the opinion heretofore filed is withdrawn and the following substituted therefor:

## OPINION

MOISE, Justice.

This is the sequel to State ex rel. State Highway Commission v. Chavez, 77 N.M. 104, 419 P.2d 759 (1966), wherein we decided that the trial court had erred in dismissing proceedings to determine damages, if any, resulting to a lessee's interest in a business lease on state public lands because of action by the State Highway Commission condemning access thereto. Upon remand the issue of damages was submitted to a jury, resulting in an award of $25,000.00 to appellee, which the State Highway Commission (appellant) here seeks to have reviewed.

Although five points of claimed error are argued, the basic issue is whether the jury verdict is supported by substantial evidence, or is so excessive as to indicate bias, prejudice or a disregard or misunderstanding of the court's instructions concerning the applicable law, and to require a reversal or remittitur.

We first consider appellant's arguments in support of its position that there is no substantial evidence to support the verdict. It appears that appellant produced an expert witness by the name of Godfrey, and the appellee, in addition to testifying

concerning his damages, produced a Mr. Templeton as a witness in his behalf. However, the opinions concerning value expressed by Mr. Templeton were stricken by the court upon appellant's motion, which action has not been appealed and, accordingly, appellee's only proof as to the amount of damages is that testified to by appellee himself.

Appellant concedes that the prevailing rule permits an owner to testify concerning the value of his land both before and after a taking by condemnation. Baltimore American Ins. Co. of New York v. Pecos Mercantile Co., 122 F.2d 143 (10th Cir. 1941); Board of Directors of Baker Metropolitan Water and Sanitation Dist. v. Calvaresi, 156 Colo. 173, 397 P.2d 877 (1964); Mississippi State Highway Commission v. Strong, 240 Miss. 756, 129 So.2d 349 (1961). It argues, however, that because the rule has been stated as one of practical necessity, particularly with reference to the value of chattels, see Annot., 37 A.L.R.2d 967, 982, and expert opinion was available here, we should adopt the rule followed by a minority of jurisdictions which denies the right of an owner to testify concerning the value of his property taken or damaged by the sovereign through the use of eminent domain. Among cases cited are: Alabama—Alabama Great Southern R. Co. v. Russell, 35 Ala.App. 345, 48 So.2d 239 (1949); Georgia—State Highway Department v. Parker, 114 Ga.App. 270, 150 S.E.2d 875 (1966); Rhode Island—Greene v. State Board of Public Roads, 50 R.I. 489, 149 A. 596 (1930); and Kentucky—Commonwealth Dept. of Highways v. Fister, 373 S.W.2d 720 (Ky.1963). For others, see I Orgel, Valuation Under Eminent Domain 567, n. 46 (2d Ed.1953). We would note that Alabama permits an owner to testify without qualification as an expert but, in the case cited, observed that the cross examination established the testimony was entitled to little weight in the light of an absence of a real basis for arriving at the value claimed. The other jurisdictions evidently require some showing as to knowlege or basis for an opinion as to value even by the owner, before permitting him to testify concerning the before and after value.

 Although as stated by appellant it does not appear that we have ever been called upon to consider this question in a condemnation case, we note that in U.J.I. 7.13 an instruction is promulgated based upon the "general" rule or, as appellant denominates it, the "prevailing" rule, to the effect that a landowner may state his opinion as to the fair market value of his property. Also, it seems in order that we note our recent approval of this rule in a replevin action, Hicks v. Maestas, 70 N.M. 347, 373 P.2d 916 (1962). While we fully appreciate the considerations which move appellant to take the position which it espouses—in condemnation cases it is always in conflict with the owner and, in addition, it is advantageously situated to produce expert testimony, where as an owner whose property is being condemned may not be—we see no reason for us to adopt a minority rule, particularly where it has not been shown to our satisfaction that the verdicts arising from application of the prevailing rule are generally greatly excessive. Furthermore, we are impressed that apart from practical considerations, the majority rule has a strong foundation in reason and logic. Nichols explains the rationale as follows:

> "* * * [H]e (the landowner) may be presumed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to have a reasonably good idea of what it is worth. * * *" 5 Nichols, Eminent Domain, § 18.4(2) (3rd Ed.1962).

Of course, should it be demonstrated that the witness has no real familiarity with the property about which he offers testimony, or that his estimates of value are predicated upon considerations which are not legally relevant, it would then be proper to strike the testimony and admonish the jury. See Shelby County R-IV School District v. Herman, 392 S.W.2d 609 (Mo. 1965); State v. Larson, 54 Wash.2d 86,

338 P.2d 135 (1959). But this was not the situation in the present case. Having been in continuous possession of the premises since 1948, and having gained his livelihood from the operation of a small business thereon for many years, appellee's familiarity with the property in question and its economic value (at least to him) is indisputable. Moreover, the estimate of value which he offered was based on elements of cost and, while original cost is not necessarily determinative of present market value, it is certainly a relevant factor to be considered. See 4 Nichols, Eminent Domain, § 12.31(2) (3rd. Ed. 1962); Annot., 172 A.L.R. 236. The appellee was a competent witness and the evidence presented was relevant; the probative value of his testimony was for the jury to assess.

The appellant describes the award here being appealed as shockingly excessive. Let us examine the record and determine if this description is merited. The value testimony of appellee's witness, Templeton, having been stricken, we do not consider the figures testified to by him. Appellee is thus left with his own testimony that his property had a $40,000.00 value immediately before the condemnation and a $5,000.00 value afterward, thus establishing that in his opinion he was damaged $35,000.00. While admittedly he was not in any sense an expert, and had little understanding of such terms as "depreciation," "leasehold value," "option," or "preferential right," he withstood an exhaustive cross examination covering the technicalities of appraising property which was designed to persuade the jury that his figures had no basis in fact.

On the other side of the picture is the testimony of Mr. Godfrey, appellant's expert, who testified at length concerning methods utilized to furnish a basis for an opinion as to market value of real property, and leasehold interests therein. For our purposes here, it is sufficient if we point to his testimony to the effect that in his opinion appellee's improvements were worth

$22,500.00 before the taking and $6,000.00 after, with a damage element of $16,500.-00. He further testified that the access right to the property for business purposes was the same figure. Under questioning, he then testified that in light of advice which he had received from counsel that the values were to be fixed only for a six-month period, this being the remaining time before the lease expired, he would conclude the improvements had no market value and, accordingly, the "before" value would be the reasonable rental value for six months, which he placed at $1,475.00, and that at expiration of the lease this value would be exhausted, leaving an "after" value of zero. Appellant insists that this is the only proper, correct and substantial proof of value, and that the maximum amount to which appellee was entitled was $1,475.00.

In our view, appellant over-simplifies the situation. Appellee was in possession of the land in question pursuant to a so-called "business lease," which had been originally issued in 1938, and thereafter renewed each five years, with the occupancy on the date of condemnation, August 9, 1957, being pursuant to a lease issued January 31, 1953, for a five-year term expiring January 31, 1958. Appellee had purchased the lease in 1948, having paid $12,000.00 for it and, thereafter, he had renewed the lease at least once; had added a considerable amount of improvements; operated the property as a store, service station, curio shop, bar, and rented two rooms to tourists. The lease agreement stated:

"11. IT IS FURTHER UNDERSTOOD AND AGREED, That this lease may be renewed for a like term of five years at the option of the Lessee, which option must be exercised at least Thirty (30) days prior to the expiration of the term herein."

It is agreed by counsel that this provision did not give to the lessee an absolute or legal right to a renewal. See State ex rel. McElroy v. Vesely, 40 N.M. 19,

52 P.2d 1090 (1935), where this court held that any effort to establish a legal right to more than a five-year term in a lease of public lands would be unconstitutional as violative of our Enabling Act, § 10, and Art. 21, §§ 9 and 10, N.M.Const. However, the witness, Godfrey, testified that it was recognized that generally these state leases were renewed as a matter of course, and that the $22,500.00 value which he placed on the improvements was predicated upon the market value which they would have on a lease with a considerable unexpired term, or a renewal that could reasonably be anticipated. Compare In re Acquiring Certain Property on North River, 118 App.Div. 865, 103 N.Y.S. 908 (1907), aff'd without opn., 189 N.Y. 508, 81 N.E. 1162; Texeramics, Inc. v. United States, 239 F.2d 762 (5th Cir. 1957); Brooklyn Eastern District Terminal v. City of New York, 139 F.2d 1007, 152 A.L.R. 307; 3 A.L.R.2d 286, 326 (2 Cir.); State v. Parkey, 295 S.W.2d 457 (Tex.Civ.App. 1956). In our view, this was the situation that subsisted on August 8, 1957, the day before the condemnation, and it was the unanticipated intervention of the condemnation that caused the loss of value. As a matter of fact, Mr. Godfrey so testified:

"Q How much was the value of the access right for commercial purposes, immediately before the taking?

"A I would say $16,500.00.

"Q How much was the value for commercial or the access for commercial purposes immediately after the Highway took it?

"A Zero.

"Q In this case, what the Highway took, was the access for commercial purposes, right?

"A Yes.

"Q And it dropped from $16,500.00 to zero by the taking, right?

"A Right."

and again:

"Q Now you told us that the value of the access right for business purposes dropped from $16,500.00 to zero because of the taking?

"A That's correct.

"Q Read that in your report—did your report—where did you report that?'

"A On page 22 of my report, under the heading, 'loss of market value,' the market value loss of $16,500.00.

"Q Is that the market value loss of the access, I had understood that was the market value of the property itself?

"A No. The only property right that was lost was the commercial access, that is the measure.

"Q So actually the access value for market purposes, because of the taking, dropped from $16,500.00 to zero on the day of the taking, right?

"A Yes.

"Q And tell the jury who had the right to the access for commercial purposes on the date of the taking?

"A On the day of taking that right by reason of the lease, was vested with Mr. Chavez."

and once more:

"Q All right, I am sorry, so August the 8th, what was the value of the preferential right of renewal?,

"A It was my basic assumption that the lease would be renewed, I would say that right of renewal would have cost $16,500.00.

"Q Now, who had that, who was the owner of that preferential value of renewal?

"A As I understand it, Enrique Chavez.

"Q Who suffered that loss, that dropped $16,500.00 from one day to the next?

"A Enrique Chavez."

◼ We do not deem it necessary that we discuss the methods generally utilized in appraising leasehhold estates, discussed at some length in appellant's brief and testified to in detail by both Mr. God-

frey and Mr. Templeton. As we view the testimony quoted above, it would support a verdict and judgment for $16,500.00. On the other hand, although not as well founded on reason and theory, the testimony of appellee is substantial to support a verdict and judgment considerably higher than the $25,000.00 awarded. The lack of formal training and experience of appellee did not make his testimony unacceptable or deprive it of its character as substantial. It did affect its weight and credibility. However, this is for the fact finder and absent exceptional circumstances is not to be interfered with by us. Grisham v. Nelms, 71 N.M. 37, 376 P.2d 1 (1962).

■ From what we have said it should be apparent that a verdict anywhere between $1,475.00 and $35,000.00 would have some basis in the evidence. However, on more or less comparable considerations the spread becomes one of $16,500.00 to $35,000.00. We do not perceive that a finding of a damage figure of $25,000.00, rather then $16,500.00, creates a situation where the amount of the award is so excessive as to require reversal because demonstrating bias, passion, prejudice or misunderstanding of the applicable law. While under the facts of the present case the award may be considerably higher than we would have found if we were the triers of the facts, we cannot say that as a matter of law it must be reversed. See rule as announced in Vivian v. Atchison, Topeka and Santa Fe Railway Co., 69 N.M. 6, 363 P.2d 620 (1961).

■ It is appellant's position, however, that when we said in State ex rel. State Highway Commission v. Chavez, supra:

"The question here present is whether the court was correct in dismissing the action as moot, thereby foreclosing the right of appellants to any damages resulting to them from the taking or damaging of their right to access to the leased property from August 20, 1957, to January 30, 1958, the end of the lease term[,]"

we delineated the recovery and established as the law of the case that the damages to which appellee was entitled were those resulting to the leasehold for the remainder of its term by reason of the taking of access during the term. We submit that the quotation relied upon states the problem as presented to us. However, our holding was not so restricted. We said:

"In our view, the language of the statute [§ 22–9–9, N.M.S.A.1953] is clear and unambiguous. Without repeating the language, it seems apparent that the right to damages accrued on the date of notice (August 9, 1957), and the actual value on that date of whatever was condemned, or for damages inflicted, is fixed as the measure of damages. It is equally obvious that where the order admitting appellee into possession was entered on August 20, 1957, interest on the award ran from that date. See 3 Nichols, Eminent Domain, § 8.5[1]."

We do not see where we held that damages were limited to the rental value to the lessees for the remainder of the term. From the testimony of appellant's appraiser, quoted above, it is clear that the lease, even though it had less than six months to run, and did not have a legally binding option to renew, was in his opinion a valuable asset worth $22,500.00 before the taking, which was reduced to $6,000.00 after the taking, or a net damage to the lessee of $16,500.00. We see nothing in our earlier holding that denied the right to have all the elements of damage resulting from the condemnation considered when arriving at the award. Indeed, such a holding would be of questionable constitutionality as permitting the taking or damaging of property without the payment of just compensation. See art. II, § 20, N.M.Const.; State ex rel. State Highway Commission v. Chavez, supra; Board of Com'rs of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682 (1953).

■ By its point II appellant asserts reversible error in the trial court's refusal to submit interrogatories to the jury so as to make it possible to determine what amount of damages was ascribed to each

element considered. We do not deem it necessary to consider each requested interrogatory in order to arrive at a conclusion concerning the correctness of the ruling. Rather, we reiterate the rule as stated in Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214 (1939):

"The rule is well settled that the trial court may exercise a reasonable discretion in the matter of what questions should be submitted to the jury for special findings, and unless that discretion be abused, it will not be disturbed. [Citing cases.]"

■ More recently, in Wright v. Atchison, Topeka and Santa Fe Railway Co., 64 N.M. 29, 323 P.2d 286 (1958), the rule was followed and its application explained. We have examined the pleadings and the interrogatories requested and conclude that there was no abuse of discretion. The situation is not like that which was present in Curtis v. Schwartzman Packing Co., 61 N.M. 305, 299 P.2d 776 (1956).

■ Although a pretrial conference was held, and it appears that an order is contemplated by Rule 16 (§ 21-1-1(16), N.M.S.A.1953) wherein the action taken at the conference is required to be set forth, we do not understand that failure to file an order constitutes reversible error. See 3 Moore's Federal Practice 1129, § 16.18, n.1 (2d Ed.1968). Particularly would this be true where no prejudice is asserted or established. Appellant in its point III contends that since the rule states that an order shall be filed in mandatory language, failure to do so must be "inherently prejudicial." Also, it argues that the failure to issue such an order "engendered much of the trial confusion, which further prejudiced the Commission." Although it is stated that a record was made of the pretrial hearing, our attention is not directed to any action taken at the conference, any amendments allowed to the pleadings, or any "agreements made by the parties as to any of the matters considered," which might have limited "the issues for trial to those not disposed of by admissions or agreements of counsel." In the circumstances, we assume that nothing was accomplished at the pretrial conference, and although it would have been helpful if even this fact were reduced to the form of an order, we do not perceive that it was required. Neither is our attention directed to anything in particular that occurred at the trial that is claimed to have been prejudicial to appellant. The point is held to be without merit.

Appellant contends in its next point that it was entitled to an award of costs under § 22-9-8, N.M.S.A.1953, and that the court erred in refusing it. The statute which was adopted in 1905, reads:

"Within twenty [20] days after the final confirmation of any report of such commissioners, as provided for in section 2103 [22-9-6], any person interested therein may appeal from the said order and confirmation to the district court of the proper county, by filing a notice with the clerk of said court that an appeal has been so taken, and thereupon the clerk shall docket said cause in the district court and it shall stand for trial in said court as other civil causes are tried and shall be tried de novo, and the parties, unless they shall waive the same, shall be entitled to a trial by jury as in ordinary cases. *Upon such trial on appeal if the party taking the appeal does not secure in his favor a more beneficial valuation of the said property than was fixed by the report of the said commissioners, then the party taking such appeal shall pay all costs that may accrue on account of the appeal.*" (Emphasis supplied.)

In 1963 (N.M.Laws 1963, ch. 248, § 5) § 22-9-59, N.M.S.A.1953, was adopted. It reads as follows:

"If the total amount of the final judgment exceeds the total amount offered by petitioner, excluding interest, for the tract or tracts for which the judgment is rendered, the petitioner shall bear all

taxable costs or fees as in any other action or proceeding."

Appellant argues that the intent and purpose of the two sections is the same, and that since the award to appellee on the trial was less than the commissioners had determined as the damages suffered, appellant is entitled to costs. As we read the two sections, they differ materially. Section 22–9–8, supra, provides that if on appeal a judgment is not entered which is more beneficial to the appellant than the amount the commissioners determined, all costs must be paid by appellant. Nothing is said requiring appellee to pay costs if the amount awarded is beneficial to the appellant, and we are loath to believe that such could have been the intention of the legislature because to so conclude, under circumstances such as those here present, would place a person whose property is being taken from him by the state in a position of having costs assessed against him in a proceeding which he neither instigated nor willingly participated in and where he was satisfied with the value fixed by the commissioners. Such an interpretation of the statute would not comport with reason and justice, and we will not so construe it unless absolutely required by its language. Compare Montoya v. McManus, 68 N.M. 381, 362 P.2d 771 (1961). We see no reason to discuss § 22–9–59, supra, since it was passed after this action was commenced and has no application. Suffice it to say the provision differs materially and substantially from § 22–9–8, supra, and we see no purpose to be served by our discussing the rationale of each as suggested by appellant. We conclude that the trial court did not err when it refused to award costs to the appellant.

Having disposed of all points argued by appellant without finding any reversible error, it is unnecessary that we consider appellee's cross appeal.

The judgment is affirmed. It is so ordered.

COMPTON and TACKETT, JJ., concur.