748 P.2d 1206

**CITY OF TUCSON, a municipal corporation, Plaintiff/Appellant,**

v.

**ESTATE OF Evo DeCONCINI, Ora DeConcini, a widow; Peter V. Gallo, as Trustee, Defendants/Appellees.**

No. 2 CA–CV 87–0105.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 24, 1987.

Reconsideration Denied Nov. 2, 1987.

Review Denied Feb. 17, 1988.

Frederick S. Dean, Tucson City Atty. by Tobin Rosen, Tucson, for plaintiff/appellant.

DeConcini McDonald Brammer Yetwin Lacy & Zimmerman, P.C. by Douglas G. Zimmerman and Diane M. Miller, Phoenix, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

The City of Tucson appeals from the judgment and denial of its motion for new trial in an eminent domain case, contending the award of compensation was excessive because the trial court erred in admitting and considering evidence of future profits from contemplated improvements. We find no error and affirm.

Appellees, the Estate of Evo DeConcini, Ora DeConcini and Peter Gallo as trustee, are the owners of a parcel of property located on the north-west corner of Stone Avenue and Speedway Boulevard in Tucson. In August 1985 the city filed a complaint to condemn a large portion of the parcel in connection with a project to widen Speedway Boulevard. At the time, a Whataburger restaurant was located on the property, having been built in 1972. The portion taken included the restaurant.

At the trial to the court on the sole issue of the amount of damages, the vice president of real estate and franchise develop-

ment of Whataburger, Inc.[1] testified that on December 21, 1983, his corporation had entered into a lease amendment agreement with appellees under which appellees agreed to reimburse Whataburger, Inc. up to $100,000 for its cost of remodeling the restaurant. Whataburger agreed to repay the remodeling costs plus interest over a 12–year period. In addition to granting permission for Whataburger to undertake the remodeling and in agreeing to lend the money to finance it, appellees also agreed to extend the term of the existing lease from 1991 to 2003. The amendment also provided for increased monthly minimum rental payments for the remainder of the lease period. The percentage rental figure of five percent of gross sales remained the same.

Whataburger's vice president testified as to the details of the remodeling which was contemplated by the corporation. They included adding a drive-through window, installing a tile roof in place of the existing metal roof, closing in some of the windows, and stuccoing part of the walls. The vice president testified that Whataburger had applied for a building permit in March 1984, which was refused because the city was planning to take the property. The applicable valuation date for the property was August 7, 1985.

Prior to the December 1986 trial, the city filed a motion in limine to preclude admission of evidence pertaining to the proposed remodeling and the increased income that appellees were projected to receive as a result of the remodeling. The court took the motion under advisement and heard the evidence, after which he ruled that the evidence was admissible and could be considered in determining the amount of the damage award.

Appellees' appraiser testified that he relied most heavily on the income approach in determining the market value of the property taken. In determining the market value under the income approach, the appraiser utilized the gross income figures which

had been provided by the Whataburger vice president. The vice president testified that, in the year before the taking, the restaurant had a gross income of $600,000. Based on the restaurant's location (which he testified was the best Whataburger location in Tucson) and the increased sales which had resulted from the remodeling of the second-best Whataburger location in Tucson, the vice president testified that the corporation would have realized an annual 35% increase in gross income if the property had not been taken and the restaurant torn down. The appraiser thus assumed a gross income of $800,000 per year in calculating the market value of the property taken. His figure for total damages resulting from the taking, including damages to the remainder, was $533,000.

The city's appraiser based his calculations on the property as it existed prior to the taking. The date of his appraisal was November 1984. He did not consider the effect of the proposed remodeling and relied on all three appraisal approaches, giving the greatest weight to the income approach in determining the market value. His figure, adjusted to the actual date of taking, was $326,700. The trial court awarded $425,000 in damages, finding that appellees were entitled to "compensation for both the limitation of access on the remaining parcel occasioned by the taking as well as some consideration for future profits as a result of the planned improvements."

■ On appeal, the city contends the court should neither have admitted the evidence regarding future profits nor considered it in determining the amount of the award because the evidence was speculative and hypothetical. Remote and speculative damages may not be considered in eminent domain cases. *City of Tucson v. Rickles*, 109 Ariz. 82, 505 P.2d 253 (1973); *Arizona Water Co. v. City of Yuma*, 7 Ariz.App. 53, 436 P.2d 147 (1968). The city contends the figures relied upon by appellees' appraiser were "sheer speculation" as

---

1. Whataburger, Inc. settled with the city prior to trial. Its damage award is thus not involved in

this appeal.

to the amount of increased income appellees would receive as a result of the remodeling.

> The ultimate inquiry in any condemnation case is the market value of the condemnee's land. Evidence which has a material bearing on market value should be admissible, without regard to whether it relates to an eventuality that might or might not occur in the 'near' or more 'distant' future, as long as the prospect of the event has substantial present influence on market value. It seems to us that the real purpose of the 'near future' and anti-'remote or speculative' qualifications of the rule stated in Nichols [4 Nichols on Eminent Domain § 12.322[1] (3d ed. 1962)] is to exclude consideration of an asserted prospective rezoning which is nothing much more than a figment of a bullish owner's imagination.

*Moschetti v. City of Tucson*, 9 Ariz.App. 108, 113, 449 P.2d 945, 950 (1969). In that case, we held that it was improper to exclude evidence that the land in question there would probably be rezoned for commercial use 12 years in the future when deed restrictions would expire. In *Flood Control District of Maricopa County v. Hing*, 147 Ariz. 292, 709 P.2d 1351 (App. 1985), Division One of this court held that a condemnee must show a reasonable probability that the land taken would have been rezoned and must show what a willing buyer would pay as a premium for that probability in order to obtain an increase in valuation based on the rezoning probability.

In this case, the lease amendment agreement which was admitted into evidence on its face specifically states that it was entered into because Whataburger, Inc. intended to remodel the restaurant and sought both permission and financing from appellees in order to carry out that intention. The amendment subjected Whataburger to an increased minimum monthly rental payment regardless of whether or not Whataburger actually remodeled the restaurant. Whataburger's vice president testified as to the details of the remodeling plans and stated that the corporation had applied for a building permit which was rejected because of the city's planned street-widening project. His estimate of the increased sales expected to be realized from the remodeling was based on specific data from another Tucson Whataburger which had been remodeled. It was also based on his experience as vice president of real estate and franchise development.

The facts of this case are not like those in the cases cited by the city. In *Tandet v. Urban Redevelopment Commission of City of Stamford*, 179 Conn. 293, 426 A.2d 280 (1979), the court held that evidence of profits calculated to be earned from a hypothetical office building projected to be built on the condemned property eight years in the future at the expiration of the existing lease was erroneously admitted. At the time of taking, a warehouse was located on the property. The court, in finding the evidence was too speculative and conjectural, also noted that evidence of some future change of use may be considered with regard to its impact on present market value. A hypothetical office building projected to be built on property on which a house was then located was involved in the case of *Port of New York Authority v. Howell*, 68 N.J.Super. 559, 173 A.2d 310 (1961), overruled on other grounds, *Housing Authority of City of New York v. Norfolk Realty Co.*, 71 N.J. 314, 364 A.2d 1052 (1976). In the case before us, the lease had already been extended to cover the remodeling and the financing for it had been negotiated by the parties. There was nothing hypothetical about the planned remodeling of an existing restaurant which had been in operation for 13 years.

In *Levitin v. State*, 12 A.D.2d 6, 207 N.Y.S.2d 798 (1960), the court held it was improper to admit evidence of market value based on a plan to construct 130 motel units on vacant land which had been condemned. A 50-unit motel which had been completed a year before was located on the remainder parcel. The court found it was too speculative to assume that the same percentage of profit that had been realized in one year on 50 units could be maintained for a 130-unit motel, holding that "a claim is improper where it is based entirely on

hypothetical profits estimated from a non-existent business." 12 A.D.2d at 8, 207 N.Y.S.2d at 800. In this case, the court was presented with evidence of the proposed remodeling of an existing business, not with the more-than-double expansion of a newly opened business on previously vacant land.

In the case of *United States v. 75.13 Acres of Land, Polk County, State of Iowa*, 693 F.2d 813 (8th Cir.1982), the landowners attempted to speculate as to proposed uses for their vacant land which would constitute the highest and best uses of the property. No actual plans had ever been made for the property prior to the taking. In *State by Commissioner of Transportation v. Mehlman*, 118 N.J.Super. 587, 289 A.2d 539 (1972), the court held that an appraiser had been erroneously permitted to testify as to projected future profits to be realized from a 19,000 square foot addition to an existing 12,000 square foot building when the parcel actually taken was vacant land, and the planned addition would have been located on only a portion of the parcel taken. Finally, in *United States v. 1.16 Acres, More or Less, in City of Stamford, County of Fairfield, State of Connecticut*, 300 F.Supp. 1021 (D.Conn.1969), the court rejected evidence of a planned apartment building for which a building permit had been obtained. The land was vacant and no on-going business existed at the time of taking.

We find that the evidence presented here showed a reasonable probability that the proposed remodeling project would have been completed within the near future had the property not been taken. We note that the evidence was particularly pertinent here since the lease provided for rent based on a percentage of gross sales. The evidence was thus properly admitted and considered by the trial court, although the record is unclear on exactly what the trial court relied in arriving at the amount of the award.

■ The city also contends that the evidence was admitted and considered in violation of A.R.S. § 12–1123, which provides in part that improvements placed upon property taken in eminent domain proceedings subsequent to the date the summons is served shall not be included in the assessment of damages. The statute also provides that the actual value of the property taken on the date of taking shall constitute the measure of compensation. There were no improvements placed on the property subsequent to the date of taking in this case, since the city rejected Whataburger's application for a building permit in March 1984, a year and a half before the date of taking in August 1985. Furthermore, the evidence was not admitted for the purpose of awarding appellees compensation for the proposed improvements. It was admitted for the purpose of determining the market value of the land at the time of taking by showing what a willing buyer would pay for the property knowing of the extended lease term and the planned remodeling. We find no violation of the statute.

The compensation award is affirmed.

HOWARD and HATHAWAY, JJ., concur.