795 P.2d 221

**STATE of Arizona, ex rel., Charles L. MILLER, Director, Department of Transportation, Plaintiff–Appellee,**

v.

**GANNETT OUTDOOR COMPANY OF ARIZONA, INC., a Delaware corporation, Defendant–Appellant.**

**No. 1 CA–CV 88–506.**

Court of Appeals of Arizona, Division 1, Department B.

June 14, 1990.

Reconsideration Denied Aug. 9, 1990.

Robert K. Corbin, Atty. Gen. by Graham A. Turner, Asst. Atty. Gen., Phoenix, for plaintiff-appellee.

Eaton, Lieberman & Dodge, Ltd. by David D. Dodge, Susan G. Sendrow, Phoenix, for defendant-appellant.

## OPINION

VOSS, Presiding Judge.

The sole issue on appeal is whether a lessee's expectation of continued lease renewals is a compensable property interest when the underlying land is taken by the state. For the reasons below, we affirm the trial court's finding that it is not compensable.

### Background

The facts are undisputed. Pursuant to a written agreement, appellant Gannett Outdoor Company of Arizona (Gannett) leased property from the Salt River Project Agricultural Improvement & Power District (SRP), on which Gannett maintained a sign structure. The original lease term was for three years ending September 30, 1983. Paragraph 5 of the lease provides:

5. After the term hereof, this agreement shall continue in force from year to year, unless terminated at the end of such term, or any additional year thereof, upon a written notice of termination by either party, served not less than thirty days before the end of such term or additional year.

Paragraph 5 clearly allows either party to terminate the year to year lease subject only to the notice provision. This availability of non-renewal notwithstanding, the lease extended from year to year after the expiration of the original term.

On September 19, 1986, the state filed a complaint in condemnation seeking possession of the leased premises as well as Gannett's sign structure. The parties agreed to the value of the sign and, therefore, this case does not involve valuing improvements. However, a dispute remained concerning the value of the leasehold, specifically, whether Gannett was entitled to compensation beyond the value of the unexpired lease term. The state moved for partial summary judgment, arguing that Gannett was not entitled to compensation for the anticipated renewal of the lease. Gannett opposed the motion relying on undisputed testimony that the lease would be renewed. The trial court granted summary judgment in favor of the state. Formal judgment was entered August 29, 1988, and this appeal followed.

### Discussion

Both the United States and the Arizona Constitutions provide that the state must provide just compensation for the taking of private property. U.S. Const. Amend. V; Ariz. Const. art. 2, § 17.[1] Preliminarily we note that a lessee is entitled to compensation for the unexpired term of his lease. *Alamo Land & Cattle Co. v. Arizona,* 424 U.S. 295, 303, 96 S.Ct. 910, 916, 47 L.Ed.2d 1 (1976). Likewise we note that a lease term containing an unconditional right to renew in favor of the lessee may constitute a legally compensable inter-

1. The takings clause of the Fifth Amendment is binding on the states through the Fourteenth Amendment. *San Diego Gas & Elec. Co. v. City of San Diego,* 450 U.S. 621, 623 n. 1, 101 S.Ct. 1287, 1289 n. 1, 67 L.Ed.2d 551 (1981); *see Chicago, Burlington & Quincy Railroad Co. v. City of Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 585–86, 41 L.Ed. 979 (1897).

est. *See State ex rel. Morrison v. Carlson*, 83 Ariz. 363, 365, 321 P.2d 1025, 1027 (1958) (unconditional right of renewal compensable element where facts demonstrated likelihood that lessee would exercise right). Here, however, we must decide whether a lessee's mere expectancy of continued lease renewals is sufficient to require compensation.[2]

The federal courts have held that an expectancy in the continuation of a lease does not constitute a compensable property interest. In *United States v. Petty Motor Co.*, 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946), the Supreme Court held that "[t]he fact that some tenants had occupied their leaseholds by mutual consent for long periods of years does not add to their rights." *Id.* at 380 n. 9, 66 S.Ct. at 601 n. 9. The *Petty Motor* Court cited with approval *Emery v. Boston Terminal Co.*, 178 Mass. 172, 59 N.E. 763 (1901), in which Holmes, C.J., set forth his often quoted statement regarding the non-compensability of a lessee's expectation in the continuation of his tenancy:

> It appeared that the owners had been in the habit of renewing the petitioners' lease from time to time.... The evidence merely showed that the landlords and the tenants were mutually satisfied and were likely to keep on together. It added nothing except by way of corroboration to the testimony that they both intended to keep on. Changeable intentions are not an interest in land, and although no doubt such intentions may have added practically to the value of the petitioners' holding, they could not be taken into account in determining what the respondent should pay. They added

nothing to the tenants' legal rights, and legal rights are all that must be paid for. Even if such intentions added to the salable value of the lease, the addition would represent a speculation on a chance, not a legal right.

*Id.* 178 Mass. at 185, 59 N.E. at 765.

This principle was followed in *Scully v. United States*, 409 F.2d 1061 (10th Cir. 1969), *cert denied*, 396 U.S. 876, 90 S.Ct. 152, 24 L.Ed.2d 134 (1969), which is factually similar to the present case. In *Scully*, the lessees held property under a series of one year leases. Though the leases did not provide for unconditional renewal, a market for them had developed due in part to the lessor's practice of renewing the leases. The court held that "the lessee of a one year term is not entitled to recover the market value added by a mere expectation that the lease will be renewed." *Id.* at 1065.

Gannett attempts to distinguish *Scully*, as well as other cases mentioned here, by arguing that those cases did not involve a lease provision which allowed the lessor to passively acquiesce to yearly extensions. We do not agree with Gannett's distinction. Like *Scully*, the lease provision in this case merely established the possibility of yearly renewals as opposed to an unfettered grant of right to the lessee. Clearly the lessor maintained the right to not renew the arrangement at the end of the term in any given year; this is the key distinction.

The bright line rule established by these earlier cases was somewhat obscured by the 1973 Supreme Court decision in *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 93 S.Ct. 791,

---

**2.** Somewhere between the possibility of compensability arising from an unconditional renewal right and the non-compensability of a mere expectation in the continuation of a lease arrangement lies the holding in *United States v. 27,223.21 Acres of Land*, 589 F.Supp. 1121 (D.Colo.1984). There, the court determined that a statutory "preference" of renewal created a probability of renewal, which is more than a mere expectation. However, that "preference" did not create a legally compensable right of renewal requiring compensation. *Id.* at 1127. *See also Cracchiolo v. State*, 146 Ariz. 452, 459, 706 P.2d 1219, 1226 (App.1985) (preferential re-

newals under state land leases do not require finding that expectation of continuation is compensable); *State v. Platte Valley Public Power*, 147 Neb. 289, 23 N.W.2d 300 (1946) (statutory preference does not require compensation). *Contra State ex rel. State Highway Comm'n v. Chavez*, 80 N.M. 394, 399, 456 P.2d 868, 873 (1969) (holding that likelihood of renewal under state land lease supported condemnation award); *but see State ex rel. State Highway Comm'n v. Gray*, 81 N.M. 399, 403–04, 467 P.2d 725, 729–30 (1970) (directly limiting *Chavez* and refusing to extend it to compensating for lost value of property not taken).

35 L.Ed.2d 1 (1973). In *Almota*, the Supreme Court reaffirmed that a lessee's expectation in continued lease renewals was not a compensable interest. *Id.* at 476, 93 S.Ct. at 795. Notwithstanding the acknowledgment of this long-standing rule of law, the court allowed the opposite result—compensating an unrecognized interest—by allowing compensation for the lessee's expectancy in the continued use of an improvement. *See id.* at 481, 93 S.Ct. at 798 (Rehnquist, J., dissenting).

Justice Rehnquist in a strong dissent demonstrated that the majority's decision was clearly at odds with the long line of cases holding that expectancies are not compensable interests. *Id.* at 481–82, 93 S.Ct. at 798–99. He emphasized that the loss of "value" alone does not automatically require compensation, rather the "value" must be associated with a cognizable property interest. *Id.* at 486–87, 93 S.Ct. at 800–01.

Speaking to the protested inconsistency Justice Stewart, writing for the 5–4 majority, distinguished *Petty Motor* and limited *Almota* to compensation for *improvements:*

> Unlike *Petty Motor*, there is no question here of creating a legally cognizable value where none existed, or of compensating a mere incorporeal expectation. The petitioner here has constructed the improvements and seeks only their fair market value.

*Almota*, 409 U.S. at 476, 93 S.Ct. at 795–96 (footnote omitted).

While the reasoning of the majority opinion may be suspect with regard to compensating improvements, the expressed rule regarding non-compensability for mere expectancies remains. *Almota* itself makes this distinction clear, as do several opinions written after *Almota*, which discuss it only in the context of compensating improvements. *E.g., United States v. 12.18 Acres of Land*, 623 F.2d 131, 132 (10th Cir.1980); *Georgia Outdoor Advertising v. City of Waynesville*, 690 F.Supp. 452, 456–57

(W.D.N.C.1988). Moreover, two federal court opinions expressly distinguished the narrow *Almota* exception from the general rule expressed in *Petty Motor* and *Scully*. *27,223.21 Acres of Land*, 589 F.Supp. at 1126; *United States v. 518.77 Acres of Land*, 545 F.Supp. 1246, 1247 n. 2 (W.D. Mo.1982).[3]

In *27,223.21 Acres of Land*, the court reviewed *Petty Motor, Scully*, and *Almota* and noted:

> Following *Almota*, a court must carefully distinguish between leasehold improvements and general leasehold interests when determining whether the possibility of lease renewal may be considered part of its value.

*27,223.21 Acres of Land*, 589 F.Supp. at 1126. As we stated earlier, this is not a case involving valuation of improvements.

The majority of state courts deciding this issue have also determined that an expectation in the continuation of a lease is not a compensable property interest. *E.g., Stroh v. Alaska State Housing Authority*, 459 P.2d 480 (Alaska 1968); *Pittsburgh Outdoor Advertising Co.*, 440 Pa. 321, 272 A.2d 163 (1970). *See generally* Annotation, *Eminent Domain: Measure and Elements of Lessee's Compensation for Condemnor's Taking or Damaging of Leasehold*, 17 A.L.R.4th 337, 461–62 (1982) (summary of several state, as well as federal cases). One of the better recent restatements of the rule is found in *Stroh*. In that case the lessee argued that although he possessed a five year lease, his uncontroverted testimony regarding conversations he had with his landlord about a continuing leasing arrangement demonstrated a probability that the lease would be renewed. The court responded:

> A tenant's right of renewal of a lease refers to a legal right, and this exists only when the lease expressly grants to the tenant the option to renew the lease at the end of its term. A mere expectation, or even probability, that the lease will be renewed based upon past practice

---

**3.** *See also American Airlines v. Los Angeles County*, 65 Cal.App.3d 325, 330 n. 6, 135 Cal. Rptr. 261, 264 n. 6 (1976) (state court noting distinction between general rule of *Petty Motor* and narrow exception discussed in *Almota* ).

and present good relations between landlord and tenant, is not a legal right of renewal. It is nothing more than a speculation on chance. Intentions which are subject to change at the will of a landlord do not constitute an interest in land so as to confer upon the tenants something to be valued and compensated for in a condemnation action.

*Stroh*, 459 P.2d at 482.

Gannett attempts to distinguish *Stroh*, arguing that the lease agreement in *Stroh* was not reduced to writing. The determining factor is not whether the agreement to continue to lease is oral or written, but rather whether the agreement constitutes a cognizable property interest.

Our research revealed only one state court decision which reached a directly contrary result. *Mayor of Baltimore v. Rice*, 73 Md. 307, 21 A. 181 (1891). We are hesitant to call this case a "minority" view in light of its age and the more recent overwhelming authority taking the contrary position. We are inclined to believe that while perhaps not overruled, this case has been tacitly abandoned by time.

We recognize that no Arizona case has specifically dealt with this issue. However we believe at least three prior decisions support our holding. In *City of Phoenix v. South Bank Co.*, 133 Ariz. 90, 649 P.2d 293 (App.1982), the court held that a *profit a prende* is a compensable legal interest. *Id.* at 93–95, 649 P.2d at 296–298. In analyzing the issue the court pointed out that a mere license is not a cognizable property interest. *Id.* at 93, 649 P.2d at 296. The court reasoned that "[t]his is because a license is generally revocable at the will of the landowner." *Id.*

Like a license, the interest asserted by Gannett was not a fixed right that could be asserted against any other. It is of no moment that the landlord would continue to agree to the yearly leases. Gannett was powerless to stop the landlord from declining to renew a new year-long lease. Similarly, Gannett is powerless to compel the State to compensate for a property interest that does not exist.

In *Cracchiolo*, division two of this court discussed certain legal issues involved in the termination of a state granted grazing rights lease. In an answer to the lessee's position that the leases would have continued for another twenty-five years absent state interference, the court held that "[s]peculative renewals of leases are simply not compensable" and "[d]amages for loss of a leasehold interest are limited to the *unexpired term of the lease.*" *Id.* at 459–60, 706 P.2d at 1226–27 (emphasis added). In reaching its holding, the *Cracchiolo* court cited many of the authorities listed above, including *Petty Motor* and *Scully*.

Another Arizona case lending support to our holding is *Pepsi–Cola Metropolitan Bottling Co. v. Romley*, 118 Ariz. 565, 578 P.2d 994 (App.1978), in which this court considered issues involved in a "condemnation" clause dispute. After determining that remand was warranted, the court noted that the proper measure of value assigned to a leasehold arises from the *"unexpired term of the lease...."* *Id.* at 572, 578 P.2d at 1001 (emphasis added). Again the principle announced does not necessarily control the result of this case, but it is consistent.

The dissent asserts that this court should allow compensation for the market value of an interest which is clearly not a legally cognizable property interest. As such the dissent would adopt an entirely novel and unsupported position allowing compensation for any market value despite the complete absence of a legal property interest. We believe the dissent's position is flawed in several respects.

The dissent states that our position is contrary to the "spirit" of our law and constitution. However, all of the cases and other Arizona authority described by the dissent solely relate to questions of value. Questions of value are separate and can only arise *after* the court determines that a compensable injury to property has occurred. As explained in one learned treatise:

> The mere fact ... that a specific right or interest has value does not, in and of

itself, give it the status of "property", within the meaning of the constitutional inhibition upon the taking of property without compensation.

2 J. Sackman, *Nichols' The Law of Eminent Domain* § 5.01[2](3rd ed.1978). This principle was described further by the United States Supreme Court in a case involving a clear and uncontradicted loss of value:

> The Fifth Amendment ... undertakes to redistribute certain economic losses inflicted by public improvements so that they will fall upon the public rather than wholly upon those who happen to lie in the path of the project. *It does not undertake, however, to socialize all losses, but those only which result from a taking of property.* If damages from any other cause are to be absorbed by the public, they must be assumed by act of Congress and may not be awarded by the courts merely by implication from constitutional provision.

*United States v. Willow River Power Co.,* 324 U.S. 499, 502, 65 S.Ct. 761, 764, 89 L.Ed. 1101 (1945) (emphasis added).

The distinction between compensable damages for a taken property interest and the non-compensable value of other lesser interests was summarized well by the Texas Supreme Court:

> Damage ... necessarily means compensation to the owner for an injury to his property, and this postulates that the owner has such a fixed right in the property as to insist upon its maintenance in its then condition. *One can not be damaged in a legal sense through the destruction of property which he has no legal right to own, keep, or maintain.* In such case no legal right is invaded, and this is the very essence of damage.

*Missouri, Kansas & Texas Railroad Co. of Texas v. Rockwall County Levee Improvement Dist. No. 3,* 117 Tex. 34, 47, 297 S.W. 206, 210 (1927) (emphasis added). In the present case, Gannett has no legal right to keep or maintain the property for longer than the present term of the lease which is one year.

We acknowledge that the cases cited by the dissent are important Arizona cases concerning valuation of legally cognizable property interests. However, these cases did not address any question concerning the clear legal property interests involved, and for this reason they are inapplicable in the present discussion. *See City of Tucson v. Estate of DeConcini,* 155 Ariz. 582, 748 P.2d 1206 (App.1987) (discussing value of uncontested lease term); *Flood Control Dist. of Maricopa County v. Hing,* 147 Ariz. 292, 709 P.2d 1351 (App.1985) (legal interest never contested by the parties or discussed by court); *Moschetti v. City of Tucson,* 9 Ariz.App. 108, 449 P.2d 945 (1969) (involving valuation of uncontested legal interest).

The dissent's citation to A.R.S. § 12–1122 similarly addresses only questions of value and "does not change any substantive rule of law as to what damages are compensable." *Rayburn v. State ex rel. Willey,* 93 Ariz. 54, 57, 378 P.2d 496, 498 (1963). Were these cases and statute controlling, or otherwise compelling, we would agree with the dissent. However, because this authority is inapplicable in the present case, we believe we must search for pertinent authority elsewhere.

The dissent also cites *Canterbury Realty Co. v. Ives,* 153 Conn. 377, 216 A.2d 426 (1966), as authority for its position. *Canterbury* involved a specific lease term of ten years and two options in favor of the tenant which if exercised would have increased the specific lease term by fifteen additional years. Before the tenant's time to exercise the lease options expired, the state condemned the property. The court held that because the tenant had the right to exercise the options at the time the property was taken, the tenant was entitled to compensation for the time remaining under the additional optional terms as well as the original term. *Id.* at 383–85, 216 A.2d at 430. The court also explained that lease provisions allowing the lessor to terminate the additional lease terms prior to the end of the tenancy did not require the court to find that the lease had no value as a matter of law. *Id.* at 385, 216 A.2d at 430.

We acknowledge, without deciding, the two legal principles stated in *Canterbury*. As we stated earlier, our courts have held that an option recited in a lease is compensable when the right is unconditional and the facts demonstrate a likelihood that the lessee would exercise the right. *State ex rel. Morrison*, 83 Ariz. at 365, 321 P.2d at 102. Similarly, it is generally accepted that the condemning authority may not stand in the position of the landlord and defeat the value of a leasehold by asserting termination clauses which were not written for its benefit. *See, e.g., Hoffman Wall Paper Co. v. City of Hartford*, 114 Conn. 531, 159 A. 346 (1932).

While we acknowledge these legal principles, we believe they are inapplicable in the present case. Gannett does not argue that it had an option to renew which was frustrated. Instead Gannett argues that it had a compensable expectation of continued renewals that depended upon its continued good standing with its landlord, as opposed to a enforceable right described in the lease. Additionally, the state does not rely on a particular lease provision written for the landlord's benefit to deny compensation. Rather, the state asks to terminate the entire lease and pay for the remainder of the existing lease term.

Our holding does not reflect on whether the value of this non-compensable interest is ascertainable in this particular case. Our holding reflects the current state of the law and reiterates that the state is obligated to pay compensation for the taking of legally cognizable property interests. Any other interests affected are non-compensable under the United States Constitution and Arizona law.

### Conclusion

In a taking of a leasehold by condemnation, an expectation in the continuation of a lease is not a compensable property interest. Therefore, Gannett is entitled to only the value of the unexpired term of its lease.

JACOBSON, J., concurs.

KLEINSCHMIDT, Judge, dissenting.

I respectfully dissent. The majority accepts the rule that even though Gannett has a property interest that has real market value, the state may, in taking property, extinguish that interest without paying compensation for it. Whatever the weight of authority from other jurisdictions, in my opinion such a result is unfair and runs counter to the spirit of our own constitution, statutes, and our decisions which stress that just compensation requires the consideration of any factor that has a material bearing on the value of the property taken.

The state took a property interest from Gannett that had real market value. One of Gannett's officers testified that the location of the sign in question was one of the company's best, and that Gannett intended to keep the location as long as the Salt River Project would let it. The Salt River Project's Supervisor of Property Management & Services testified that the Project had renewed the lease every year since 1983 and planned to continue to do so as long as Gannett wished to renew. Gannett's appraiser, based on Gannett's history of lease renewal, said that the sign in question would produce income for another eight years. The state's appraiser concluded that an estimated renewal for five years was the most realistic.

The Arizona Constitution, article 2, section 17 provides that property shall not be taken without just compensation and that such shall be ascertained by a jury in the manner prescribed by law. Our statutes flesh out these provisions. Arizona Revised Statutes section 12–1122 says that:

A. The court or jury shall ascertain and assess:

1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein, and if it consists of different parcels, the value of each parcel and each estate or interest therein separately.

\*    \*    \*    \*    \*    \*

B. As far as practicable, compensation shall be assessed for each source of damage separately.

The terms of these provisions do not, of course, compel compensation for the renewal value of this lease. They do, however, reflect a genuine intent that property owners be fully and fairly compensated for everything of value that is taken. Even more persuasive on this general point are several Arizona cases which have analyzed the factors that must be taken into account in fixing compensation.

In *City of Tucson v. Estate of DeConcini*, 155 Ariz. 582, 748 P.2d 1206 (App.1987), the owner of property which was leased to a restaurant insisted that if the city condemned the property the owner was entitled to compensation based upon an increase in the restaurant's revenue that was expected to result from a planned remodeling. The city argued that such increased profits were not compensable because they were remote and speculative. Division Two of this court disagreed.

In *Moschetti v. City of Tucson*, 9 Ariz. App. 108, 449 P.2d 945 (1969), the same court held that the trier of fact may consider the probability of rezoning if that is a factor that influences the market value of the property, saying:

> The ultimate inquiry in any condemnation case is the market value of the condemnee's land. Evidence which has a material bearing on market value should be admissible, without regard to whether it relates to an eventuality that might or might not occur in the 'near' or more 'distant' future, as long as the prospect of the event has substantial present influence on market value.

*Id.* at 113, 449 P.2d at 950.

In *Flood Control District of Maricopa County v. Hing*, 147 Ariz. 292, 709 P.2d 1351 (App.1985), we held that if a person whose property is condemned can show a reasonable probability that the property will be rezoned and that a willing buyer would pay a premium for that probability, such must be taken into account in assessing the value of the condemned property.

There is at least one case from another jurisdiction which strongly supports the idea that the possibility that the lease will be renewed must be taken into account. *Canterbury Realty Co. v. Ives*, 153 Conn. 377, 216 A.2d 426 (1966), held that a renewal option which could be terminated by the lessor was compensable because it had market value. The court said:

> We do not overlook the provisions in the lease under which [the lessor] reserved the right to terminate it, under specified conditions, at any time after the expiration of the original ten-year term. We cannot say, as a matter of law, however, that these provisions rendered the lease of no value to [the lessee].... Whether the lease, including the options to renew, has a value under all the circumstances disclosed and, if so, what that value is is a question of fact for determination under established procedures.

*Id.* at 385, 216 A.2d at 430 (citations omitted).

The Supreme Court of the United States applied precisely the same reasoning in *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973). The question presented there was whether, upon condemnation of a leasehold, a lessee with no right of renewal was entitled to receive the market value of its improvements unlimited by the remaining term of the lease because of the expectancy that the lease would be renewed. The court rejected the government's argument that a tenant's expectancy in a lease renewal was not a compensable legal interest because it was speculative. Instead, it took the realistic view that such an approach failed to recognize what a willing buyer would have paid for the property—another way of saying that the majority's "legal interest" approach does not really compensate for fair market value. *See also Georgia Outdoor Advertising, Inc. v. City of Waynesville*, 690 F.Supp. 452, 456–57 (W.D.N.C., 1988).

I acknowledge that the holding in *Almota* is restricted to requiring compensation for *improvements*, as opposed to compensation for the value of the leasehold. Why the Supreme Court drew this distinction is

unclear, but there is nothing to compel us to make a similar differentiation, and I see no reason to do so.

Finally, I do not find the Arizona cases discussed by the majority to be persuasive. *Cracchiolo v. State*, 146 Ariz. 452, 706 P.2d 1219 (App.1985) dealt with a written grazing lease that had expired and had been orally extended before eminent domain proceedings were started. The lessees contended that the leases would have been extended for another twenty-five years. The written leases, however, specifically provided that they would expire upon condemnation and that the lessee would have no compensable right in the condemnation proceeds. The effect of this clause was the primary focus of the court's attention. Moreover, there was no evidence in *Cracchiolo* that the lessor had any intention of extending the lease.

*Pepsi–Cola Metropolitan Bottling Co. v. Romley*, 118 Ariz. 565, 578 P.2d 994 (App.1978) did not involve a claim for the value of a lease enhanced by the probability of possible renewals. As the majority concedes, it provides little guidance on this point.

The essence of the rule the majority adopts in this case is that a property value which *is not* speculative as a matter of fact *is* speculative as a matter of law. I would reverse and remand this matter to the trial court for a determination of the fair market value of the lease.